371 S.E.2d 340

**STATE of West Virginia**

v.

**Tim JOHNSON.**

No. 17530.

Supreme Court of Appeals of West Virginia.

July 1, 1988.

Silas Taylor, Deputy Atty. Gen., State Capitol, for the State.

J. David Judy, III, Moorefield, for defendant.

MILLER, Justice:

In this appeal from four felony convictions in the Circuit Court of Pendleton County, the defendant, Tim Johnson, contends the trial court committed instructional and evidentiary errors requiring the reversal of his convictions. The defendant further contends that his multiple convictions violate established double jeopardy principles. With the exception of one conspiracy count, we affirm his convictions.

## I.

It is undisputed that during the early morning hours of December 24, 1985, Sarah Pope Barger, a codefendant, entered the Center Food Market in Brandywine, Pendleton County, West Virginia, and took several hundred dollars from the cash register. She then returned home where she gave all the stolen money to her husband, Marc Barger. This store was owned by Mrs. Barger's parents.

The defendant, who was alleged to have participated in the breaking and entering of the store, was charged in separate counts with breaking and entering, grand larceny, conspiracy to commit breaking and entering, and conspiracy to commit grand larceny. The State introduced evidence at trial to show the motive for the breaking and entering and larceny was to obtain money to buy illegal controlled substances.

The State's first witness was Trooper D.I. Pyle of the West Virginia Department of Public Safety who testified that his investigation had revealed a forced entry into the store. He subsequently questioned Mrs. Barger who had admitted to the use of illegal drugs, and obtained two confessions from her, the second of which implicated the defendant.

On cross-examination, Trooper Pyle disclosed that Mrs. Barger had also been charged with a subsequent breaking and entering of her parents' home which occurred in January, 1986. It was after her

arrest on that charge that she made two confessions concerning the breaking and entering of the store. In her initial confession, she implicated her husband, stating that they had a fight on the evening of December 23, 1985, concerning the fact that they did not have enough money to buy Christmas presents for everyone. After her husband questioned her about whether she could obtain access to her parents' store, she broke into the store and gave him the four to five hundred dollars she had taken. No mention was made in this confession of the defendant's participation. Trooper Pyle also stated on cross-examination that Mrs. Barger had admitted her use of illegal drugs.

Mr. and Mrs. Pope, the owners of the store, were then called as witnesses. Mr. Pope testified that he had reluctantly filed criminal charges against his daughter in connection with the robbery of the store and expressed the belief that she had broken into the store because she was "hooked" on drugs. Mrs. Pope stated that her daughter on numerous occasions had taken money and merchandise from the store during the year preceding the robbery because of her drug dependency.

The State then called Anita Bowers, who testified that she and her boyfriend, "B.B." Harris, had lived in Harrisonburg, Virginia, at the time the store was robbed, and that they were friends with Mrs. Barger and her husband, Marc. Over a general objection, she was permitted to testify that she had "partied" with the defendant and the Bargers, an apparent reference to the recreational use of drugs. She then testified, over an objection that her testimony related to a collateral crime, that at around 3:00 or 4:00 a.m. on December 24, 1985, Marc Barger and the defendant had visited her residence in Virginia for the purpose of buying drugs from her boyfriend.

The trial court at the conclusion of Ms. Bowers' direct testimony instructed the jury that whatever had happened in Virginia was only admissible for the purpose of showing the defendant's motive, if any, for participating in the acts alleged and could not be considered for any other purpose.

On cross-examination, Ms. Bowers admitted that her boyfriend had been selling a number of illegal drugs and had supplied Mrs. Barger with methamphetamines. In order to impeach her credibility, she was questioned at length concerning her drug use in general and whether she had been using drugs the morning when the defendant and Mr. Barger had allegedly sought to purchase drugs from her boyfriend. Defense counsel also questioned her about the fact that no criminal charges had ever been brought against her.

Sarah Pope Barger, the State's final witness, testified that she and her husband had an argument during the evening hours of December 23, 1985, about not having enough money for Christmas presents. Her husband had left in anger at about 10:30 p.m. and returned around midnight with the defendant. After a few minutes, the defendant had asked, obviously referring to her parents' store: "Could we go and rob the big bank tonight?" Fearing she would be caught, she initially refused to commit the robbery, but was eventually persuaded by her husband to do it.

After about an hour and a half of discussion, she and the defendant set out to rob the store. After some surveillance of the store and her parents' home which was located nearby, they returned home and she told her husband she was going to attempt the robbery. The defendant then drove her to the store and waited in the car while she broke in and took the money. Upon returning home she gave all the money to her husband who, along with the defendant, left indicating they planned to drive to Virginia to buy drugs. She admitted that part of the reason for the commission of the crime was to obtain money to purchase drugs.

On cross-examination, defense counsel questioned Mrs. Barger concerning the fact that she had not mentioned the defendant in any way in her initial written confession. His cross-examination revealed that it was not until several days later, after she had been arrested, placed in jail, and been appointed counsel, that she first implicated the defendant. Defense counsel also high-

lighted the inconsistencies between her trial testimony and her statements to the police. She acknowledged that the defendant did not receive any of the stolen money, and that when her husband had returned home on the afternoon of December 24, 1985, he still had nearly all the money and had not purchased any drugs. She also admitted that she had robbed her parents on a number of occasions and that some of the stolen property had been used to pay off drug debts she and her husband had incurred.

The defendant presented six witnesses and testified on his own behalf in support of an alibi defense. He explained that he and Marc Barger had gone to Harrisonburg to do some Christmas shopping on December 23, 1985, and he returned home by 8:00 p.m. At about 10:00 p.m., Mr. Barger stopped by his residence and within half an hour they had decided to go to Mr. Barger's house to drink some imported beer.

After they arrived Mr. Barger and his wife became engaged in an argument about her allegedly having an affair with "B.B." Harris. The defendant eventually grew weary of the argument and after drinking some beer asked for a ride home. Mr. Barger told his wife to drive him home. They left at about 2:15 a.m. and she let him drive their new car. Shortly after their departure, she told him to drive her by her parents' store so she could get something to drink. She entered the store and came out with two Pepsis and then insisted that he drive her home. He complied with her request and then Marc drove him home at about 2:30 a.m.

He also testified that he had gone to the store at night with Mrs. Barger in the past to get gasoline, and that he had no idea she had stolen any money or committed any crime. He also specifically denied Ms. Bowers' testimony about having gone to Virginia to buy drugs in the early morning hours of December 24, 1985. The defendant's principal alibi witness was his girlfriend who corroborated his testimony that he left home with Marc Barger at about 10:00 p.m. on December 23, 1985, and that he had returned home at about 2:30 or 3:00 a.m. the following morning.

## II.

The defendant's first contention is that the trial court committed reversible error in allowing the testimony of Anita Bowers because the State failed to disclose her as a prospective witness in violation of the pretrial discovery order.

After Ms. Bowers had completed her testimony, the defendant, outside the presence of the jury, moved for a mistrial because her name had not been included on the list of witnesses the State intended to present at trial. The trial court denied the motion as untimely, since this issue was not raised until after the witness had completed her testimony. The court also noted that he did not believe defense counsel was surprised by the witness's presence at trial because she had testified in a companion case the previous day and defense counsel had been present throughout her testimony.

We recently discussed at some length the law governing prosecutorial noncompliance with pretrial discovery orders in *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987). There the State failed to disclose oral confessions allegedly made by the defendant to fellow inmates after the commission of a prison murder. We recognized the continuing vitality of our general standard for determining prejudice in Syllabus Point 4 of *Miller:*

> "Our traditional appellate standard for determining whether the failure to comply with court-ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980). This was evolved prior to the adoption of our Rules of Criminal Procedure, but is applied to Rule 16 discovery."

We did not in *Miller* undertake to alter Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980),[1] in

---

1. Syllabus Point 2 of *Grimm* states:

"When a trial court grants a pre-trial discovery motion requiring the prosecution to

order to refer to discovery under Rule 16 of the Rules of Criminal Procedure, which we now do by modifying it and combining it with Syllabus Point 4 of *Miller:*

Our traditional appellate standard for determining whether the failure to comply with court ordered pretrial discovery is prejudicial is contained in Syllabus Point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), and is applicable to discovery under Rule 16 of the Rules of Criminal Procedure. It is summarized: The nondisclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

█ We also stressed in *Miller* that under Rule 16(d)(2), W.Va.R.Cr.P.,[2] trial courts have broad authority to impose a variety of sanctions when the noncompliance with court-ordered discovery is revealed at trial in order to alleviate possible prejudicial error:

"[A]ll courts agree that the rule 'gives the [trial] court broad discretion in deciding what should then be done.' 2 C. Wright, *supra* at § 260. The threshold inquiry is to 'take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance [or recess if the trial has begun], and any other relevant circumstances.' 2. C. Wright, *supra* at § 260. Some courts have added that consideration should be

given to 'whether the prosecution acted in bad faith in violating the . . . discovery order.' *United States v. Fernandez,* 780 F.2d 1573 (11th Cir.1986), citing *United States v. Soto,* 711 F.2d 1558 (11th Cir. 1983)." 178 W.Va. at 625–26, 363 S.E.2d at 511. (Footnotes omitted).

This was summarized in Syllabus Point 5 of *Miller:*

"Rule 16(d)(2) [of the West Virginia Rules of Criminal Procedure] enables a trial court to impose sanctions that may have the effect of curing a late discovery problem."

We stated in note 20 of *Miller,* 178 W.Va. at 626, 363 S.E.2d at 512, that "the failure [of the defense] to ask for a recess or a continuance to attempt to meet the late disclosed evidence or to request other sanctions, such as striking the evidence, are also factors courts have considered in determining whether the error would warrant granting a new trial."[3]

█ Ms. Bowers was obviously important to the State's case, as she provided the only evidence corroborating Mrs. Barger's testimony, whose credibility was pivotal to the conviction and was very much in issue. This case bears very little similarity to *State v. Thompson,* 176 W.Va. 300, 342 S.E.2d 268 (1986), cited by the State, where the testimony of the nondisclosed witness was introduced simply to establish the chain of custody.

The State points out that defense counsel, as in *Thompson,* was aware, or reasonably should have been aware, that Ms. Bowers would be a witness for the State,

---

disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case."

**2.** As pertinent here, Rule 16(d)(2) provides:

"Failure to Comply with a Request.—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evi-

dence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just."

**3.** We also pointed out in note 13 of *Miller,* 178 W.Va. at 625, 363 S.E.2d at 511, that there was a "distinction between court-ordered discovery, which is based on a motion or general court order and can be rather far ranging, and the constitutionally required disclosure of exculpatory material based on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny where no motion is required."

**626**

as defense counsel was present at a codefendant's earlier trial when Ms. Bowers testified.[4] The State also notes that defense counsel knew through discovery that Mrs. Barger was going to testify that the defendant went to Ms. Bowers' residence in Virginia immediately after the crime.

We conclude in the circumstances of this case that the trial court did not err in denying the defendant's motion for a mistrial. The trial court's finding that defense counsel was not surprised by the testimony is supported by the evidence. Furthermore, some consideration must be given to the failure of defense counsel to timely object to the State's calling the witness or to request a recess or a continuance either before or after her testimony in order to prepare for cross-examination or to attempt to secure rebuttal evidence. Courts in other jurisdictions have concluded that a trial court ordinarily does not abuse its discretion in denying a motion for mistrial based upon a failure to disclose a witness's name, where there is no initial objection to the witness's testimony, no motion to preclude the testimony nor a request for a recess or continuance to prepare to meet the matters covered in the witness's testimony. *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 202, 98 L.Ed.2d 153 (1987); *Wagner v. State*, 474 N.E.2d 476 (Ind.1985); *State v. Barnes*, 414 So.2d 711 (La.1982); *State v. Friend*, 570 S.W.2d 817 (Mo.App.1978); *Simms v. State*, 492 P.2d 516 (Wyo.), *cert. denied*, 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142 (1972).

## III.

The defendant next argues that the trial court erred in allowing the State, over objection and in violation of the pretrial order granting the defendant's motion in limine,

---

**4.** The State also points out that the prosecutor represented to the trial court that he had told the defense counsel at the codefendant's trial that Ms. Bowers would be a witness against his defendant. Defense counsel stated that he did not recall such representation.

**5.** The West Virginia Rules of Evidence became effective on February 1, 1985. Rule 404(b) states:

to introduce evidence of unrelated collateral crimes, namely that the defendant used drugs and had gone to Virginia to purchase drugs shortly after the robbery.

Both at common law and now under Rule 404(b) of the West Virginia Rules of Evidence, the State may introduce evidence that the defendant committed other crimes for the purpose of showing motive, intent, plan, or the other factors enumerated in the rule.[5] Our traditional statement of the collateral crime rule is expressed in Syllabus Point 11 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

"Subject to exceptions, it is a well-established common-law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless such other offenses are an element of or are legally connected with the offense for which the accused is on trial."

We explained in *State v. Harris*, 166 W.Va. 72, 76, 272 S.E.2d 471, 474 (1980), the reason why the collateral crime rule prohibits introduction of prior criminal acts:

"The purpose of the rule excluding evidence in a criminal prosecution of collateral offenses is to prevent a conviction for one crime by the use of evidence tending to show that the accused engaged in other legally unconnected criminal acts, and to prevent the inference that because the accused engaged or may have engaged in other crimes previously, he was more liable to commit the crime for which he is being tried."

*"Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Dolin*, 176 W.Va. 688, 692, 347 S.E.2d 208, 213 (1986), we emphasized that such "evidence is highly prejudicial and can result in a jury convicting a defendant based on his past misdeeds rather than on the facts of the present offense[.]" Although the trial in *Dolin* occurred before the adoption of our Rules of Evidence, we commented on the parallel between the common law collateral crime doctrine and Rule 404(b). One of the issues in *Dolin* was the motive exception, which is at issue here since the State claims that the purchase of drugs was the ultimate motive for taking the money from the store. In discussing this exception, we utilized commentary from the federal rules of evidence as follows:

> "A good summary of the motive exception to the collateral crime rule can be found in 2 J. Weinstein & M. Berger, [Weinstein's Evidence] *supra*, ¶ 404[14] at 404–108 through –111, supported by a number of cases:
>
>> " 'Motive has been defined as "supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent." Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act. Evidence of another crime has been admitted to show the likelihood of defendant having committed the charged crime because he needed money, sex, goods to sell, was filled with hostility, sought to conceal a previous crime, or to escape after its commission, or to silence a potential witness.' 176 W.Va. at 697, 347 S.E.2d at 217. (Footnotes omitted)."

■ Here the evidence tending to show drugs were purchased with the money stolen was relevant to show the defendant's motive for participation in the actual commission of the crime and his reason for entering into a conspiratorial agreement to commit the offense. Evidence that the defendant had used drugs with his co-conspirators was likewise admissible to show motive for commission of the crimes charged. This case is somewhat similar to *State v. Nicholson*, 162 W.Va. 750, 252 S.E.2d 894 (1979), where evidence of the defendant's attempt only a few days prior to the crime charged to break and enter a home in the same neighborhood to obtain money to pay the defendant's rent was held admissible.

Other jurisdictions have concluded in similar circumstances that evidence showing that the defendant had purchased or attempted to purchase drugs is admissible to show the defendant's motive for committing a theft offense. *United States v. Cyphers*, 553 F.2d 1064 (7th Cir.1977); *Carruth v. State*, 182 Ga.App. 786, 357 S.E.2d 122 (1987); *Commonwealth v. Evans*, 460 Pa. 313, 333 A.2d 743 (1974); *see People v. Wallace*, 70 Ill.Dec. 32, 114 Ill.App.3d 242, 448 N.E.2d 910 (1983). We believe the probative value of the other crime evidence in this case was not outweighed by the possible prejudicial effect on the jury.[6] We find no error in the introduction of the evidence. Furthermore, the trial court properly cautioned the jury as to the limited purpose for its introduction.

## IV.

■ The defendant next contends the trial court gave an abstract and legally incorrect instruction defining the concept of a principal in the first degree.[7] He also ar-

---

**6.** In *Dolin*, we reviewed a number of procedural safeguards surrounding the utilization of collateral crime evidence and pointed out in Syllabus Point 3:

> "Before a trial court can determine that evidence of collateral crimes is admissible under one of the exceptions, an *in camera* hearing is necessary to allow a trial court to carefully consider the admissibility of collateral crime evidence and to properly balance

the probative value of such evidence against its prejudicial effect."

This same balancing test is included in Rule 403 of both the federal and West Virginia Rules of Evidence. *See generally* F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 6.3(B)(2) (2d ed. 1986).

**7.** The challenged instruction reads:
"PRINCIPAL
(In the First Degree)

gues that the evidence shows him to be at most a principal in the second degree and, therefore, the instruction was not supported by the evidence.

We note initially that, despite its heading, the instruction complained of, as the State correctly points out, is not an instruction defining the common law concept of a principal in the first degree, but rather a principal in the second degree. We spoke to these terms in *State ex rel. Brown v. Thompson*, 149 W.Va. 649, 654, 142 S.E.2d 711, 715, *cert. denied*, 382 U.S. 940, 86 S.Ct. 392, 15 L.Ed.2d 350 (1965), where we said: "It is well established ... that a person who is the absolute perpetrator of a crime is a principal in the first degree ... and that a person who is present, aiding and abetting the fact to be done, is a principal in the second degree."

■ In *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980), this Court abolished, at the indictment stage, the common law distinctions among principals in the first and second degree and accessories before the fact and held in Syllabus Point 1, in part: "[A] general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact." We recently explained that *Petry* also had an impact on the instructional phase of a criminal case in *State v. Reedy*, 177 W.Va. 406, 415, 352 S.E.2d 158, 167 (1986):

"Our holding in *Petry* explicitly abolished the distinctions between principals in the first degree and aiders and abettors at the indictment stage. Therefore, the prohibition against aiding and abetting instructions in instances where the indictment only charges the defendant as a principal in the first degree has also been abolished."

"If two or more persons share a common intent and purpose to commit a crime and each performs some act in the commission of the crime, one doing one thing and the other something else and the crime is committed, then each of such persons may be found guilty of the crime."

It would thus not have been improper for the trial court in this case to have given a proper instruction advising the jury that the defendant could be convicted of grand larceny and breaking and entering, if the jury believed beyond a reasonable doubt that the defendant was present aiding and abetting in the commission of the crime.

■ The instruction that was given here, apart from its label, does not obviously misstate the law, and we perceive nothing in the circumstances of this case which would render it confusing or misleading to the jury. We agree the instruction is abstract, and as such should not have been given. This error, however, does not require a new trial under the general rule stated in Syllabus Point 7 of *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982):

"It is not reversible error for a trial court to give an abstract instruction where the instruction is not misleading or inapplicable to the case."

Furthermore, the record reveals that only a general objection to the instruction was made at trial. General objections are ordinarily not sufficient to preserve the error for appellate review, as is stated in Syllabus Point 3 of *Gangwer*:

"The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection."

*See State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983); Rule 30, W.Va.R.Cr.P.

## V.

### A.

The defendant's final assignment is based upon the double jeopardy provisions of the United States and West Virginia Constitutions.[8] He contends that under either the "same transaction" or "same evi-

8. Art. III, § 5 of the West Virginia Constitution declares: "No person shall ... be twice put in jeopardy of life or liberty for the same offence." The Fifth Amendment to the United States Constitution also mandates: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb."

dence" test, he committed only one offense. He also specifically argues that his conviction of two conspiracy offenses under W.Va.Code, 61–10–31,[9] constitutes a double jeopardy violation. The State acknowledges that the evidence relied upon by the prosecution to prove two conspiracies was substantially the same, but submits that the defendant is at most entitled to sentencing relief on one conspiracy count.

This Court has had few occasions to discuss the law of conspiracy. We recognized in *State v. Less,* 170 W.Va. 259, 264–265, 294 S.E.2d 62, 67 (1981), that the agreement to commit an offense is the principal element in the crime of conspiracy, and also concluded in Syllabus Points 1 and 4:

"1. *W. Va. Code,* 61–10–31(1), is a general conspiracy statute and the agreement to commit any act which is made a felony or misdemeanor by the law of this State is a conspiracy to commit an 'offense against the State' as that term is used in the statute."

"4. In order for the State to prove a conspiracy under *W. Va. Code,* 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy."

We also stated in *Less* that our general conspiracy statute is almost identical in language to a federal conspiracy statute, 18 U.S.C. § 371 (1966), and we looked to federal court decisions interpreting the federal statute for guidance in interpreting our statute. We again look to federal law. The seminal case is *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), in which the defendants had been indicted and convicted on seven counts, each charging a conspiracy to violate several federal tax laws. The government conceded there had been only one agreement. The United States Supreme Court held there could be only one conviction under the general conspiracy statute:

"[W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, as the statute requires, the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its object. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Braverman v. United States,* 317 U.S. at 53, 63 S.Ct. at 101–02, 87 L.Ed. at 28.[10]

---

**9.** W.Va.Code, 61–10–31, our general conspiracy statute, states in material part:

"It shall be unlawful for two or more persons to conspire ... to commit any offense against the State ... if ... one or more of such persons does any act to effect the object of the conspiracy.

\* \* \* \* \* \*

"It shall not be a defense to any prosecution under this section ... that the conduct charged or proven is also a crime under any other provision or provisions of this Code or the common law."

**10.** The federal courts continue to follow this rule. *E.g., United States v. Honneus,* 508 F.2d 566 (1st Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *Natarlelli v. United States,* 516 F.2d 149 (2d Cir.1975); *United States v. Morrow,* 717 F.2d 800 (3d Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984); *United States v. Garner,* 574 F.2d 1141 (4th Cir.), 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Bradsby,*

628 F.2d 901 (5th Cir.1980); *United States v. Mori,* 444 F.2d 240 (5th Cir.), *cert. denied,* 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971); *United States v. Chiattello,* 804 F.2d 415 (7th Cir.1986); *United States v. Thomas,* 759 F.2d 659 (8th Cir.1985); *United States v. Peacock,* 761 F.2d 1313 (9th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *Ward v. United States,* 694 F.2d 654 (11th Cir.1983).

Multiple conspiracy convictions may be obtained if, in addition to a general conspiracy statute, there is also a specific conspiracy statute. Each separate conspiracy statute then must be examined to determine the legislative intent. *United States v. Garner,* 574 F.2d at 1146–47. In *United States v. Tedder,* 801 F.2d 1437 (4th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987), the defendants were indicted for conspiracy to import marijuana under 21 U.S.C. § 963 and for conspiracy to possess marijuana with intent to distribute under 21 U.S.C. § 846. The Fourth Circuit upheld the multiple conspiracy convictions

Numerous state courts have recognized that the double jeopardy clause of the Fifth Amendment prohibits the prosecution of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed. *E.g., State v. Stellato,* 10 Conn.App. 447, 523 A.2d 1345 (1987); *Kilgore v. State,* 251 Ga. 291, 305 S.E.2d 82 (1983); *Perkins v. State,* 483 N.E.2d 1379 (Ind.1985); *Commonwealth v. Cerveny,* 387 Mass. 280, 439 N.E.2d 754 (1982); *People v. Porterfield,* 128 Mich. App. 35, 339 N.W.2d 683 (1983); *State v. Louf,* 126 N.J.Super. 321, 314 A.2d 376 (1973); *State v. Ross,* 86 N.M. 212, 521 P.2d 1161 (N.M.App.1974); *People v. Macklowitz,* 135 Misc.2d 232, 514 N.Y.S.2d 883 (N.Y.Sup.1987); *State v. Fancher,* 27 Or. App. 91, 555 P.2d 792 (1976); *but see Cartwright v. Commonwealth,* 223 Va. 368, 288 S.E.2d 491 (1982).

 If there is more than one agreement, however, multiple conspiracy convictions under W.Va.Code, 61–10–31, can be lawfully obtained. However, it is not always a simple matter to determine whether single or multiple conspiracies are involved.[11] The federal appeals courts have evolved a number of factors under a "totality of circumstances" rule to determine whether one or two separate conspiracies exist for double jeopardy purposes, as explained in *United States v. Thomas,* 759 F.2d 659, 662 (8th Cir.1985):

> "The following factors are normally considered in determining whether one or two conspiracies are involved: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspir-

acy took place.... These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object." (Citation omitted).

*See also United States v. Felton,* 753 F.2d 276 (3d Cir.1985); *United States v. Marable,* 578 F.2d 151 (5th Cir.1978); *United States v. Sinito,* 723 F.2d 1250 (6th Cir. 1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Bendis,* 681 F.2d 561 (9th Cir.1981), *cert. denied,* 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982); *United States v. Loyd,* 743 F.2d 1555 (11th Cir.1984).

We, therefore, conclude that under our general conspiracy statute, W.Va.Code, 61–10–31, a conspiracy to commit one or more substantive crimes does not mean an accused may be charged with conspiracy to commit each separate crime. Under our general conspiracy statute, if it is determined that multiple conspiracy agreements were made to commit the several substantive crimes, then the accused may be charged with multiple conspiracies to commit each of these crimes. To determine whether single or multiple conspiracy agreements exist, the courts consider a number of factors under a totality of circumstances test.

 In the present case, we conclude as a matter of law that only one conspiracy case was shown by the evidence. Viewing the evidence in the light most favorable to the State, only one agreement was proven—an agreement to rob the store. The fact that the act of robbing the store constituted two distinct crimes, breaking and entering and larceny, cannot transform one agreement into two agreements under the conspiracy statute. The totality of circumstances test would show the time, persons acting as co-conspirators, and the place where the events alleged as a part of the

---

using the test articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). *See also United States v. Manbeck,* 744 F.2d 360 (4th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Morado,* 454 F.2d 167 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972).

**11.** *See* P. Marcus, Prosecution and Defense of Criminal Conspiracy Cases § 4.02[1][a] (1986); *People v. Macklowitz,* 135 Misc.2d 232, 514 N.Y.S.2d 883 (N.Y.Sup.1987).

conspiracy took place were substantially the same. The statutory substantive offenses charged were the same as the overt acts charged in the two conspiracy charges, i.e., (1) breaking and entering and (2) larceny. Consequently, the defendant's conviction of two conspiracy offenses constituted a violation of the foregoing established double jeopardy principles.

### B.

The remainder of the defendant's double jeopardy argument is without merit. It is settled law that conspiracy and the underlying substantive offense are separate and distinct offenses for double jeopardy purposes. *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979) (conspiracy to inflict bodily injury and felonious assault); *see Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

### C.

The same is true as to the argument that breaking and entering and grand larceny are the same offense for double jeopardy purposes. We follow the test formulated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which we summarized in Syllabus Point 8 of *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983):

> "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

*See also State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985).

The breaking and entering statute, W.Va.Code, 61–3–12,[12] under which the defendant was indicted generally requires a breaking and entering or entry without breaking of a store or other building with the intent to commit a felony or any larceny therein. This statute does not require proof of an actual larceny or other felony.

We spoke to the related crime of burglary under W.Va.Code, 61–3–11(a), in *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981), which involved the breaking and entering of a dwelling house "with intent to commit a felony or any larceny therein." In *Louk*, we pointed out that a completed larceny is not necessary since the crime "is complete once there has been an unauthorized entry and a showing that there was an intent to commit a felony." 169 W.Va. at 26, 285 S.E.2d at 434.

The principal concern in *Louk* was whether the offense of larceny was a lesser included offense to a burglary such that the court should have instructed the jury that larceny was a lesser included offense. We determined that it was not and in so doing adopted Syllabus Point 1, a test which is essentially the same as *Blockburger*'s double jeopardy test:

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense."

This same result occurs in this case simply because the only other element of a breaking and entering once the unauthorized entry is shown is that there was an intent to commit larceny or another felony. It is not necessary to show that the larceny or other felony was completed. If a larceny or other felony is completed then another offense arises other than the breaking and entering. Here in addition to the breaking and entering, a completed larceny occurred. Its elements were separate and distinct from the "intent to commit larceny" in our breaking and entering statute. W.Va.Code, 61–3–12. These additional elements for larceny are set out in Syllabus Point 3 of *Louk*:

> "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the per-

12. W.Va.Code, 61–3–12, states, as pertinent here: "If any person shall, at any time, break and enter, or shall enter without breaking, any … house or building, other than a dwelling house … with intent to commit a felony or any larceny, he shall be deemed guilty of a felony…."

sonal property of another against his will and with the intent to permanently deprive him of the ownership thereof."

Because breaking and entering and larceny are distinct and separate offenses, indictment and conviction for both offenses even though they occurred close in time does not violate double jeopardy principles. Courts that have considered the question generally agree that larceny is not a lesser included offense of breaking and entering, *State v. Porter*, 283 N.W.2d 351 (Iowa 1979); *State v. Smith*, 66 N.C.App. 570, 312 S.E.2d 222 (1984); *Koonce v. Commonwealth*, 452 S.W.2d 822 (Ky.1970); *Davis v. State*, 226 So.2d 257 (Fla.App.1969), and that double jeopardy principles do not prohibit both a larceny and breaking and entering conviction arising out of a single criminal episode. *Commonwealth v. Ford*, 397 Mass. 298, 490 N.E.2d 1166 (1986); *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986).

For the foregoing reasons, this case is remanded to the Circuit Court of Pendleton County for the purpose of vacating one of the defendant's conspiracy convictions and rendering a judgment of not guilty on that charge. The judgment of the circuit court is otherwise affirmed.

AFFIRMED IN PART, REVERSED IN PART; AND REMANDED WITH DIRECTIONS.