**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent,

vs.)  No. 22-0421 (Mineral County 19-F-77)

Clinton Frederick Knotts,
Defendant Below, Petitioner

# MEMORANDUM DECISION

Petitioner Clinton Frederick Knotts appeals the April 7, 2022, sentencing order of the Circuit Court of Mineral County. After a jury trial, petitioner was sentenced to an indeterminate term of eight to thirty-five years in prison upon his convictions for burglary, grand larceny, conspiracy to commit burglary, conspiracy to commit grand larceny, and misdemeanor destruction of property. Respondent State of West Virginia filed a response in support of the circuit court's order.[1] After a careful review of the parties' briefs, the appendix record, and the applicable law, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion. *See* W. Va. R. App. P. 21(a). This case satisfies the "limited circumstances" requirement and is appropriate for a memorandum decision rather than an opinion. W. Va. R. App. P. 21(d).

On July 21, 2019, Mineral County 9-1-1 received a suspicious vehicle complaint about a white Chevrolet car parked for several hours in the road in front of a home owned by James and Jean Nutter (the victims) in Fountain, West Virginia. The caller stated petitioner's co-defendant below, Tammy Gray, was sitting in the vehicle.[2] Lieutenant Chris Leatherman, Captain J.J. Wingler, and Deputy Logan Talley of the Mineral County Sheriff's Department responded. When they arrived at the victims' home, the car was gone, but the officers noticed "items piled up next to the driveway." The home had outbuildings and the doors of those outbuildings "were standing ajar." The officers also noticed the front door to the residence was damaged and appeared to have been forced open.

---

[1] Petitioner appears by counsel J. Brent Easton. Respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General Lara K. Bissett.

[2] Petitioner's co-defendant, Tammy Gray, filed a separate appeal with this Court which was decided in *State v. Tammy Gray*, No. 22-0082, 2023 WL 4030074 (W. Va.  June 15, 2023) (memorandum decision).

After the officers did a walk-through of the victims' home and outbuildings, one officer remained to inventory and take photographs of the items strewn around the property. The other two officers drove to Gray's home, where they observed a white 2009 Chevrolet Impala "completely packed full of items." The officers knocked on Gray's door for several minutes while yelling "Sheriff's Office," but received no response. After "several minutes" passed, the officers entered Gray's home through an unlocked door, believing they had authority to do so because they possessed two warrants to search Gray's residence for evidence of two previous unrelated burglaries.

Inside Gray's home, officers found petitioner and Gray asleep on a couch, and petitioner was holding a trail camera. The officers woke them up and searched them, finding "several pieces of jewelry" in petitioner's pocket. Both the trail camera and the jewelry were later identified by the victims as their property.

The officers were unsure whether the existing search warrants gave them authority to search the Chevrolet for evidence relevant to the victims' burglary, so they impounded the vehicle and obtained a warrant to search it. The victims were on vacation in Virginia and could not immediately provide police with a comprehensive list of missing property. Therefore, the police requested a search warrant for categories of items based on logical inference from information known to them and the items strewn around the victims' driveway which pointed to the perpetrators' interest in landscaping projects. The search warrant listed the property to be seized as: jewelry, hunting equipment, items used for the assembly and manufacture of a garden pond, landscaping equipment or supplies, a hose, and "any other item that was stolen from the [Nutter] residence."

Petitioner was subsequently indicted for burglary, grand larceny, conspiracy to commit burglary, conspiracy to commit grand larceny, and misdemeanor destruction of property. Petitioner filed a motion to suppress evidence seized during the search of Gray's home.[3] At the suppression hearing, petitioner's counsel argued that none of the three search warrants described the property to be seized with the particularity required by article III, section 6 of the West Virginia Constitution and the Fourth Amendment to the United States Constitution. After hearing the testimony of the witnesses and arguments of counsel, the court disagreed, finding that all three warrants were "fine" and that "there's only so many ways I can describe a blue box, a blue tote, or a green garden hose."

At petitioner's trial on August 26, 2021, Capt. Wingler testified about his investigation and detailed the evidence of burglary at the victims' home. Lt. Leatherman and Dep. Talley described the jewelry and trail camera they observed on petitioner's person when they entered Gray's residence, as well as the items seized from Gray's vehicle pursuant to the search warrant. Lt. Leatherman testified he took photographs of the evidence seized from petitioner and co-defendant Gray. One of the victims viewed photographs of the jewelry and other property found in petitioner's possession and identified the property as hers. The court admitted the following exhibits into evidence: photographs of the victims' property sitting in their driveway, photographs of the property seized from petitioner and Gray, a property receipt itemizing the seized property,

_____

[3] Petitioner testified that he had been living in Gray's home for four months prior to the search.

2

and a 911 computer assisted dispatch report of the initial call about a suspicious vehicle parked in front of the victims' home. After deliberation, the jury ultimately convicted petitioner of all charges.

On August 20, 2021, the State filed a recidivist information alleging that petitioner had a prior felony conviction. Petitioner did not have a hearing on this recidivist information until his sentencing hearing on April 7, 2022. At sentencing, the court found petitioner to be the same person who was previously convicted of burglary in 2012 and applied a recidivist enhancement to his sentences. This appeal followed.

I.      Recidivist Enhancement.

In his first assignment of error, petitioner argues the circuit court lacked jurisdiction to enhance his sentence under the recidivist statute, West Virginia Code § 61-11-19, because he was not arraigned on the recidivist information within the next term of court in which he was convicted. When the State files a recidivist information, the court

> shall, *before expiration of the next term at which such person was convicted*, cause such person or prisoner to be brought before it, and upon an information filed by the prosecution attorney, setting forth the records of conviction and sentence … and alleging the identity of the prison with the person named in each, shall require the prisoner to say whether he or she is the same person or not.

W. Va. Code § 61-11-19 (2020) (emphasis added).[4] "The procedural recidivist requirements of W. Va. Code § 61-11-19 . . . are mandatory, jurisdictional, and not subject to harmless error analysis." Syl. Pt. 1, *Holcomb v. Ballard*, 232 W. Va. 253, 752 S.E.2d 284 (2013).[5] Further, recidivist proceedings "'are wholly statutory. In such proceedings, a court has no inherent or common law power or jurisdiction. Being in derogation of the common law, such statutes are generally held to require a strict construction in favor of the prisoner.' *State ex rel. Ringer v. Boles*, 151 W. Va. 864, 871, 157 S.E.2d 554, 558 (1967)." *Holcomb*, 232 W. Va. at 253, 752 S.E.2d at 285, Syl. Pt, 2, in part (citing *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981)).

---

[4] Petitioner's crimes occurred in 2019 and the legislature amended West Virginia Code § 61-11-19 in 2020. Relevant to this appeal, the previous version of the statute provided that the "court shall, before *expiration of the term* at which such person was convicted, cause such person or prisoner to be brought before it . . . ." W. Va. Code § 61-11-19 (1943) (emphasis added). In their briefs before this Court, the parties agree that W. Va. Code § 61-11-19 (2020) applies in this case. We find it unnecessary to determine which version of W. Va. Code § 61-11-19 applies to this case because the State did not comply with either version.

[5] The cases cited in this opinion analyze the previous version of W. Va. Code § 61-11-19, but as explained herein, this does not affect our analysis under this set of facts.

In this case, petitioner was tried and convicted during the May 2021 term of court[6], but he was not arraigned on the recidivist information until April 7, 2022, during the January 2022 term of court. This was two terms of court after petitioner was convicted. At sentencing, petitioner's counsel objected to imposition of a recidivist enhancement, stating "we are beyond the time that the recidivism statute permits [petitioner] to be recidivised." Because petitioner was not arraigned on the recidivist information until after the next term of court at which he was convicted, the court erred when it enhanced petitioner's sentence. *See* W. Va. Code § 61-11-19; W. Va. R. Tr. Ct. 2.21; *Holcomb*, 232 W. Va. at 253, 752 S.E.2d at 285, Syl. Pts. 1 and 2, *Holcomb*. Thus, we reverse the circuit court's sentencing order as it pertains to this issue and remand for resentencing with instructions to vacate the recidivist sentence enhancements.

## II. Double Jeopardy.

In his second assignment of error, petitioner argues his convictions for two counts of conspiracy – conspiracy to commit burglary and conspiracy to commit grand larceny – violate double jeopardy. In support of this argument, petitioner contends the evidence at trial demonstrated the existence of only one agreement between petitioner and his co-defendant, i.e., to burglarize the victims' home with the intent to steal items found therein. In other words, petitioner argues the scope of the conspiracy to commit grand larceny was wholly subsumed within the conspiracy to commit burglary. *See State v. Tammy Gray*, No. 22-0082, 2023 WL 4030074, at *8 (W. Va. June 15, 2023) (memorandum decision). Petitioner admits that he failed to timely object to this issue but asks this Court to review this issue on the merits. We construe this as a request to review for plain error.

"This court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, *sua sponte*, in the interest of justice, notice plain error." Syl. Pt. 1, *State v. Myers,* 204 W. Va. 449, 513 S.E.2d 676 (1998). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.'" Syl. Pt. 4, *State v. Wilson*, 244 W. Va. 370, 853 S.E.2d 610 (2020) (citations omitted).

> The plain error doctrine of W. Va. R. Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result.

*Id.* at 372, 853 S.E.2d at 612, Syl. Pt. 3 (citations omitted).

Petitioner frames this assignment of error solely as one involving the Double Jeopardy Clause of the West Virginia Constitution which "prohibits multiple punishments for the same offense." Syl. Pt. 2, in part, *State v. Kent*, 223 W. Va. 520, 678 S.E.2d 26 (2009); *see* W. Va. Const. art. III, § 5 ("nor shall any person, in any criminal case . . . be twice put in jeopardy of life or liberty

---

[6] *See* W. Va. R. Tr. Ct. 2.21 (providing that the terms of court for Mineral County are "on the second Tuesday in January, and the first Tuesday in May and September").

for the same offense."). Thus, our inquiry in this case is whether petitioner received multiple punishments for the same offense. Petitioner's co-defendant Tammy Gray raised an identical double jeopardy argument in her appeal; finding plain error, this Court vacated one of Gray's conspiracy convictions. *Gray*, 2023 WL 4030074, at *7-10. Therefore, in the interest of justice, we review petitioner's double jeopardy argument in this case for plain error.

The first issue to be determined on plain error review is whether the circuit court committed error in sentencing petitioner for two separate conspiracies. *See Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4. "The double jeopardy clause of the Fifth Amendment prohibits the prosecution of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed." Syl. Pt. 7, *State v. Johnson*, 179 W. Va. 619, 371 S.E.2d 340 (1988); *see State v. Judy*, 179 W. Va. 734, 737, 372 S.E.2d 796, 799 (1988) (holding that "as a matter of law that the defendant's multiple conspiracy convictions were improper under *Johnson*."). To determine whether single or multiple conspiracy agreements exist, this Court applies a "totality of circumstances test" that examines the following factors:

> (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

*Johnson*, 179 W. Va. at 622, 371 S.E.2d at 343, Syl. Pt. 8, in part. Applying the totality of circumstances test to this case, our review of the record on appeal discloses no evidence that petitioner and Ms. Gray entered into two separate conspiracies. *See Gray,* 2023 WL 4030074, at *8-9. Viewing the evidence in the light most favorable to the State, only one agreement was proven – an agreement to burglarize the victims' home and outbuildings and steal the contents. The fact that this agreement constituted two distinct crimes, burglary, and larceny, "cannot transform one agreement into two agreements under the conspiracy statute." *Id.* at *9 (citing *Johnson*, 179 W. Va. at 630-31, 371 S.E.2d at 351-52). The following circumstances of the two alleged conspiracies are substantially the same: time, persons acting as co-conspirators, and place where the conspiratorial events took place. And the statutory substantive offenses charged – burglary and larceny – were the same as the overt acts charged in the two counts of conspiracy. *Id.* Consequently, we find petitioner's convictions for two counts of conspiracy constitutes error.

The second prong of the plain error test requires this Court to evaluate whether the error in this case was "plain." Syl. Pt. 4, in part, *State v. Wilson*, 244 W. Va. 370, 853 S.E.2d 610 (2020) (citations omitted). It is firmly established that, in the absence of multiple agreements, petitioner can only be sentenced for one conspiracy. *Johnson*, 179 W. Va. at 630, 371 S.E.2d at 351. In this case, the State did not present any evidence that the petitioner and Ms. Gray entered into more than one agreement. *See Gray*, 2023 WL 4030074, at *9. Thus, we find petitioner's sentence for two counts of conspiracy to be an error that is plain.

The third prong of the plain error test requires this Court to determine whether the petitioner's conviction and sentence for two conspiracies, when only one existed, affected petitioner's "substantial rights." *Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 3, in part.

5

In this case, petitioner suffered multiple punishments for conspiracy when there was only one agreement to burglarize the victims' home and steal personal property. Given the constitutional prohibition against multiple punishments for the same offense, we conclude that the circuit court's error in sentencing petitioner twice for the same conspiracy affected petitioner's substantial right to be protected from double jeopardy. *See id.* at 372, 853 S.E.2d 612, Syl. Pt. 4.

The final prong of the plain error test requires this Court to analyze whether the circuit court's error seriously affected "the fairness, integrity, or public reputation of the judicial proceeding." *Id.* at 372, 853 S.E.2d at 612, Syl. Pt. 3. As discussed above, we have found that there was only one agreement reflected in the record on appeal and so two conspiracy convictions for one agreement to commit both burglary and larceny violates the Double Jeopardy Clause. *See* W. Va. Const. art. III, § 5; *Johnson*, 179 W. Va. at 622, 371 S.E.2d at 343, Syl. Pt. 7; *Gray*, 2023 WL 4030074, at *9-10. Further, the consecutive sentences imposed by the trial court violate well-established precedent that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as being twice tried for it." *Ex parte Lange*, 85 U.S. 163, 173 (1873). Considering the foregoing authorities, we conclude the final prong of the plain error test is satisfied because petitioner was prosecuted, convicted, and punished for two counts of conspiracy, where the evidence at trial demonstrated the existence of only one agreement between the conspirators.

For all these reasons, we reverse the circuit court insofar as it sentenced petitioner on two counts of conspiracy and remand with instructions to vacate one conspiracy conviction, render a judgment of not guilty on that charge, and resentence petitioner accordingly.

### III.     Search and Seizure.

In his third and final assignment of error, petitioner alleges the circuit court erred in denying his motion to suppress the evidence gathered by police pursuant to three search warrants. When reviewing the circuit court's ruling on a motion to suppress, the "court's factual findings are reviewed for clear error," and the court's "ultimate determination as to whether a search or seizure was reasonable . . . is a question of law that is reviewed *de novo*." Syl. Pts. 1 and 2, in part, *State v. Payne*, 239 W. Va. 247, 800 S.E.2d 833 (2016) (quoting Syl. Pts. 1 and 2, in part, *State v. Lacy*, 194 W. Va. 104, 468 S.E.2d 719 (1996)). Petitioner argues the police seized property pursuant to two search warrants, but the warrants did not describe the property with necessary particularity. More specifically, petitioner contends that because the warrants contained "generic terms" describing "items commonly found in any home," they had the effect of allowing a "largely general" search. *See, e.g., Lacy*, 196 W. Va. at 111, 468 S.E.2d at 726 (reasoning that "the police may not use an initially lawful search as a pretext and means to conduct a broad warrantless search."). For this reason, petitioner argues the circuit court erred in its decision to admit the seized items into evidence.[7]

---

[7] Petitioner also claims "the court appeared to admit [the seized evidence] under a 'plain view' exception" to the warrant requirement. But the circuit court's order denying petitioner's motion to suppress holds "the search warrants were properly issued and properly executed," and does not rely upon the plain view exception. "[H]aving held that a court speaks through its orders,

6

We find petitioner's argument fails for several reasons. First, prior to the burglary in question, the officers had two unexecuted warrants to search Gray's residence. Gray was a suspect in two burglaries in Mineral County that occurred before the day in question. None of the items described in these warrants had anything to do with the burglary of the victims' residence, but they gave the officers the right to enter Gray's home when no one responded after they knocked and announced their presence. *See Gray*, 2023 WL 4030074, at *11. Second, petitioner does not allege an unlawful entry into Gray's home because the warrants lacked particularity, or for any other reason. Third, with respect to the search warrant for the vehicle, there is no support in our precedent for the proposition that items commonly found in homes must be described in a search warrant with some enhanced layer of particularity or additional descriptors. *Id.* To the contrary, the law requires only that

> [i]n determining whether a specific warrant meets the particularity requirement, a circuit court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized.

*Lacy*, 196 W. Va. at 107, 468 S.E.2d at 722. We find categories of items listed in the vehicle search warrant are sufficient to meet these requirements. The categories were developed by the officers based upon their investigation at the victims' home, and the property in petitioner's possession during the protective frisk. Thus, the officers "reasonably knew" what items they were looking for during the search. Given the facts and circumstances of this case, we cannot say the circuit court's findings to this effect were clearly erroneous. Further, we find any alleged lack of particularity in the search warrants for Gray's home is irrelevant because petitioner does not claim the officers' entry into the home was unlawful and no evidence seized pursuant to those warrants was entered into evidence at petitioner's trial. We agree with and affirm the circuit court's conclusion that the description of items to be seized from the vehicle was constitutionally sufficient and further find that it was based upon adequate factual findings. Petitioner is not entitled to relief based on this assignment of error.

IV.    Conclusion

For the foregoing reasons, the order of the circuit court is affirmed in part, reversed in part, and remanded with instructions to vacate the recidivist sentence enhancements, vacate one of petitioner's conspiracy convictions, render a judgment of not guilty on that vacated charge, and resentence accordingly.

**ISSUED:** November 17, 2023

---

we are left to decide this case within the parameters of the circuit court's order." *State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212, n.2 (1992); *State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]").

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn