372 S.E.2d 796

**STATE of West Virginia**

v.

**Kenneth B. JUDY.**

No. 17268.

Supreme Court of Appeals of
West Virginia.

July 22, 1988.

Rehearing Denied Sept. 22, 1988.

**736**

Larry Garrett, Karen L. Garrett, Garrett & Garrett, Moorefield, for Judy.

Atty. Gen., Mary Beth Kershner, Asst. Atty. Gen., Charleston, for the State.

PER CURIAM:

Kenneth B. Judy appeals his conviction by a jury in the Circuit Court of Pendleton County for burglary, grand larceny, breaking and entering, petty larceny, and four counts of conspiracy.[1] He raises numerous assignments of error on appeal. We affirm in part, reverse in part, and remand for resentencing.

## I.

On March 14, 1985, in the early afternoon, Calvin and Helen Borror's home was burglarized. Approximately $19,000 was taken from a safe located in the home. Joseph Hanson, Wesley Eye, Steve Eckard, and the defendant were charged with burglary and grand larceny and conspiracy to commit each of these offenses. Mr. Hanson and Mr. Eye entered the Borror dwelling while Mr. Eckard waited in their car. The defendant allegedly acted as a lookout. He lived across the road from the Borror's country store, located four miles from their home. While the others committed the burglary, the defendant watched the store to alert them if the Borrors left the store.

When questioned about the Borror burglary, Mr. Hanson informed the State police that he, Mr. Eckard, and the defendant had entered the Weaver Cabinet Shop on the night they planned the Borror burglary and had taken two light bulbs for a dusk-to-dawn light. Mr. Hanson said that the trio had entered the shop in response to the defendant's suggestion to look for cabinets.

The July, 1985 indictment included counts for breaking and entering the Weaver Cabinet Shop, petty larceny, conspiracy to commit these substantive offenses, and conspiracy to commit grand larceny, for the plan to take cabinets. The defendant was tried on the Borror and Weaver charges in the same proceeding. The co-conspirators were tried separately.

## II.

The defendant first contends his four conspiracy convictions violate well settled double jeopardy principles.[2] We recently addressed this issue in *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988). There, the defendant and a friend planned a break-in at a market owned by the friend's family. While the defendant waited in a car, the friend entered the market and stole approximately $500 from the cash drawer. The defendant was convicted of breaking and entering, larceny, and two conspiracies. We determined that

1. One of the conspiracy counts, conspiracy to commit petty larceny, was dismissed by the circuit court as unsupported by the evidence.

2. While it appears the defendant did not make a double jeopardy objection below, we address the issue as one of plain error. Other jurisdictions hold that due to its constitutional implications, a claim of error founded on double jeopardy may be reviewed in the absence of a timely objection. *E.g., Tookak v. State,* 648 P.2d 1018 (Alaska App.1982); *State v. Kitt,* 8 Conn.App. 478, 513 A.2d 731 (1986); *People v. Pendleton,* 75 Ill.App.3d 580, 31 Ill.Dec. 294, 394 N.E.2d 496 (1979); *State v. Gant,* 586 S.W.2d 755 (Mo.App. 1979).

the defendant had entered into only one conspiracy, and reversed one of the conspiracy convictions. We stated the general rule in Syllabus Point 7:

"The double jeopardy clause of the Fifth Amendment prohibits the prosecution of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed."

■ Whether there is one conspiracy, or multiple conspiracies, is a question of fact to be determined under the totality of the circumstances. We summarized in Syllabus Point 8 of *Johnson* the appropriate factors to be considered:

"The following factors are normally considered under a totality of circumstances test to determine whether one or two conspiracies are involved: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object."

■ We conclude as a matter of law that the defendant's multiple conspiracy convictions were improper under *Johnson*. There were at most two conspiracies—a conspiracy to commit the Borror break-in and the conspiracy to commit the Weaver break-in. While the break-ins involved the commission of two or more crimes, each sprung from one conspiracy.

Applying the *Johnson* factors, we note that the preparatory discussions for each break-in occurred at one time and place and involved the same conspirators. Moreover, the "overt acts" in furtherance of the conspiracies were identical to the substantive crimes for which the defendant was indicted. We thus hold that, consistent with double jeopardy principles, the defendant could be convicted of only two conspiracies. We reverse the remainder of the defendant's conspiracy convictions, and remand the case with directions to resentence the defendant.

III.

The defendant also cites as error the admission into evidence of the deposition of Mr. Hanson. On the first day of trial, the State called Mr. Hanson to testify. When he did not appear, the State moved to admit his pretrial deposition under Rule 804(b)(1), W.Va.R.Evid.,[3] and represented that Mr. Hanson was unavailable to testify. It is the defendant's position that Mr. Hanson was not "unavailable," as the State did not undertake reasonable measures to secure his attendance at trial.

The confrontation clause of the Sixth Amendment requires that "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 607 (1980). As *Roberts* went on to explain: "[A] witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." 448 U.S. at 74, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. (Citations omitted; emphasis in original).

This constitutional mandate is codified in Rule 804(a)(5), W.Va.R.Evid., which provides, in part: " 'Unavailability as a wit-

---

**3.** Rule 804(b)(1), W.Va.R.Evid., provides:
"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"(1) Former Testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition tak-

en in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

ness' includes situations in which the declarant ... is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means." The requirement that the State reasonably attempt to produce a hearsay declarant is consistent with our prior case law. *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980); *State v. Sauls*, 97 W.Va. 184, 124 S.E. 670 (1924).

■ We believe the record strongly supports the conclusion that the State's efforts to secure Mr. Hanson's attendance at trial were reasonable. First, Mr. Hanson's testimony was explicitly required as a part of his plea agreement. Second, he was verbally instructed to attend by the State's attorney and by the police well in advance of trial. Third, while Mr. Hanson was not subject to subpoena, the State represented that the sheriff "[had] spent three long days in Virginia hunting for him" to serve him with process.

As a final matter, it should be noted that Mr. Hanson did appear on the second day of trial as a witness for the defendant, and was questioned extensively about his failure to appear on the previous day. He admitted with remarkable candor that he had deliberately absented himself from the proceedings. We conclude that the State's efforts to compel Mr. Hanson's presence were reasonable and that the admission of the deposition was, therefore, not erroneous.

### IV.

Another point of error raised by the defendant involves the admission of a statement made by him shortly after his arrest. He asserts that the statement should have been suppressed, as it was obtained in violation of the Fifth Amendment and our prompt presentment rule.

The defendant was arrested at 2:00 p.m. after a search of his home had been completed. He was apprised of his *Miranda* rights immediately upon arrest and was transported to the police station. He arrived at the station at 3:15 p.m. While he was fingerprinted, the defendant asked to talk with one of the police officers. The officer declined and advised that he was "forbidden" to talk to the defendant without a lawyer present. Without any prompting by the officer, the defendant said that he had been at home on the day of the burglary, that he had gone to Franklin at 11:00 a.m., and that he had returned to visit the Borror's store in the afternoon. This statement was admitted by the State to refute an alibi defense.

■ We do not think the circumstances by which the statement was obtained violate either the letter or the spirit of *Miranda*, which operates only when the defendant is in custody and is subject to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). As *Innis* phrases it, interrogation embraces "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. at 301, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 308. (Footnotes omitted).

While the defendant was admittedly in custody, he was not subjected to interrogation as contemplated by *Miranda*. The officer to whom the statement was made did not put questions to the defendant and, in fact, refused to speak at all. Very simply, the police did not engage in any conduct which was likely to produce the inculpatory statement. We believe that the defendant's statement was "volunteered" and, therefore, admissible under Syllabus Point 2 of *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979):

"Volunteered admissions by a defendant are not inadmissible because the procedural safeguards of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not followed, unless the defendant was both in custody and being interrogated at the time the admission was uttered."

We also do not believe the defendant's statement was excludable under prompt presentment principles. We held in Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984):

" 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), as amended."

We stressed in *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986), that the proper focus in prompt presentment cases is on delay which precedes a confession. "[T]he significant time period ... [for purposes of the prompt presentment rule] is the time between the arrest or the time probable cause exists to arrest and the time a statement is obtained from the accused." 177 W.Va. at 269, 351 S.E.2d at 618.

■ Here the delay of approximately one hour between the defendant's arrest and his statement to the police was not unreasonable. It may be attributed in substantial part to transportation and to the performance of routine administrative procedures. These are justifiable delays, and are not to be counted for prompt presentment purposes. *State v. Persinger*, 169 W.Va. 121, 135, 286 S.E.2d 261, 270 (1982). Moreover, the minimal delay in presentment was not purposeful, and cannot be said to have induced the defendant's inculpatory statement. We thus conclude that the admission of the statement was proper.

## V.

Six days before the defendant's trial, Mr. Eckard entered a plea and the State announced that it would call him as a witness. The defendant was also provided with a copy of a statement made by Mr. Eckard to the State's attorney. On the first day of trial, the defendant stated that he had had inadequate opportunity to interview Mr. Eckard and moved for a continuance or for the taking of a deposition. These motions were denied, and the defendant assigns their denial as error.

It is well settled that the decision whether to grant a continuance lies within the sound discretion of the trial court. We stated our rule in Syllabus Point 1 of *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986):

" 'The granting of a continuance is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.' Syl. pt. 1, *State v. Jones*, 84 W.Va. 85, 99 S.E. 271 (1919)."

■ We do not think the denial of the defendant's motion for a continuance was an abuse of discretion. The defendant was apprised of the State's decision to call Mr. Eckard immediately after entry of the plea and was provided a copy of his statement for review. He was not deprived of an opportunity to speak with Mr. Eckard either prior to or subsequent to the plea.

■ The defendant also sought to require Mr. Eckard to submit to a deposition pursuant to Rule 15, W.Va.R.Crim.P. We would make two pertinent observations with regard to Rule 15: (1) it is not designed as a discovery rule, and (2) it may be invoked only under exceptional circumstances.[4] We noted in *State v. Ferrell*, 174 W.Va. 697, 698, 329 S.E.2d 62, 64 (1985), that "the rule contemplates a party taking the deposition *of only his own witness*, a requirement that comports with the purpose of preserving testimony." (Emphasis added). We also pointed out in *Ferrell* that the right to a deposition arises only in "exceptional circumstances" which are "strictly limited ... to criminal cases where the defendant's witness *is unable to attend the trial....*" 174 W.Va. at 698–699, 329 S.E.2d at 64. (Emphasis added).

---

**4.** Rule 15(a), W.Va.R.Crim.P., provides, in part: "Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition...."

Here, of course, Mr. Eckard was a witness for the State and not for the defendant. It is also clear from the record that Mr. Eckard was present and prepared to testify at the trial on the defendant's behalf. There were, therefore, no "exceptional circumstances" which would activate the right to a deposition under Rule 15.

## VI.

It is also contended the trial court erred in denying the defendant's motion to sever the offenses in the indictment. To resolve the issues presented in this assignment of error, we turn our attention to Rules 8(a) and 14, W.Va.R.Crim.P.

Joinder of offenses is controlled by Rule 8(a), W.Va.R.Crim.P. That rule permits the joinder of multiple offenses in one indictment if they are "of the same or similar character." Rule 14, W.Va.R.Crim.P., provides a mechanism for relief if the joinder of offenses, though proper, is prejudicial to the defendant's case.[5]

The defendant does not seriously dispute that the requirements of Rule 8(a) have been met. Our focus, then, is on the prejudicial impact of the joinder. Where a defendant moves for severance due to a prejudicial joinder of offenses, the matter is deemed to lie within the sound discretion of the trial court. We stated the rule in Syllabus Point 6, in part, of *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981):

> "[W]here there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court."

*See also State v. Cunningham,* 170 W.Va. 119, 290 S.E.2d 256 (1981); *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985).

The denial of the defendant's motion to sever was, we think, a proper exercise of discretion. The defendant does not assert that, as a result of the joinder, he was denied the opportunity to present viable defenses or that he wished to testify as to some charges and not others. His sole claim is that the joinder of the Borror charges bolstered the Weaver charges, and that the multiple conspiracy charges bolstered one another. As we discuss in more detail below, the evidence was sufficient to sustain the conviction for the Weaver break-in, and it cannot be said to have been bolstered by evidence as to the Borror break-in.

## VII.

Finally, the defendant challenges the sufficiency of the evidence in support of the jury verdict. In Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1979), we stated the applicable standard for review of a guilty verdict:

> "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

We conclude that the evidence presented below, viewed most favorably to the State, is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt. The State's evidence showed that the defendant planned with the co-conspirators to burglarize the Borror residence. Testimony by the defendant's

---

5. Rule 14, W.Va.Crim.P., reads, in part:
 "(a) *Offenses.* If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection *in camera* any statements or confessions made by the defendant or other relevant information which the state intends to introduce in evidence at the trial."

neighbors and Mrs. Borror placed the defendant at his home and in the Borror store during the commission of the burglary. The defendant's alibi witnesses placed Mr. Judy in Franklin during the time the coconspirators stated they began the Borror burglary. Although there was a conflict in the testimony, the jury ultimately had to resolve this conflict and did so in favor of the State. This does not mean there was insufficient evidence to support the conviction.

 The same is true of the Weaver break-in. Mr. Hanson, by deposition, stated that he and the defendant planned to break and enter the Weaver Cabinet Shop to steal cabinets. Once in the store, they were unable to locate suitable cabinets and opted to steal light bulbs instead. This evidence was substantially corroborated by Mr. Eckard. The convictions for breaking and entering, petty larceny, and conspiracy were, therefore, supported by substantial evidence.[6]

For the foregoing reasons, we remand this case to the Circuit Court of Pendleton County with directions to resentence the defendant. The judgment of the Circuit Court of Pendleton County is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

---

**6.** The defendant also raises a number of evidentiary errors. He cites two instances in which evidence of character was improperly admitted. On cross-examination of a State witness, the defense attorney inquired "[w]hat kind of man have you found him [the defendant] to be?" The witness replied that he did not know. On redirect, the State's attorney asked whether the witness had heard any "rumors" about the defendant. The witness made no response to this question. On another occasion, a witness for the State was asked whether he trusted the defendant and responded in the negative. We believe that any error was adequately cured. A timely defense objection as to each incident was sustained and the jury was instructed to disregard the matters in its deliberations.

The defendant also cites as error a question put to Mr. Hanson by the State's attorney. Specifically, the attorney asked why another coconspirator had pled guilty to arson. This question, too, was objected to and the jury was admonished not to consider it.

Also objected to was the testimony of Trooper Pyle, who participated in the search of the defendant's premises. Other trial testimony disclosed that no property was seized in the search. Trooper Pyle was called solely to respond to the question whether "it could have been possible for you [the police] to have missed something" in the search. He replied affirmatively. The defendant contends the testimony was irrelevant and prejudicial. We conclude, on our review of the whole record, that any error in the admission of this testimony was harmless.