# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **H.M.**

**No. 17-0716** (Taylor County 15-JA-22)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father K.M., by counsel Jamella L. Lockwood, appeals the Circuit Court of Taylor County's July 13, 2017, order terminating his parental rights to H.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ashley V. Williams Hunt, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion to continue the dispositional hearing, denying him a post-adjudicatory or post-dispositional improvement period, and in terminating his parental rights without first granting him an improvement period.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

Additionally, petitioner's counsel filed the appellate brief in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure, which provides that

> [i]n extraordinary circumstances, if counsel is ethically compelled to disassociate from the contentions presented in the brief, counsel must preface the brief with a statement that the brief is filed pursuant to Rule 10(c)(10)(b). Counsel should not inject disclaimers or argue against the client's interests. If counsel is ethically compelled to disassociate from any assignments of error that the client wishes to raise on appeal, counsel must file a motion requesting leave for the client to file a pro se supplemental brief raising those assignments of error that the client wishes to raise but that counsel does not have a good faith belief are reasonable and warranted.

Per this Rule, petitioner's counsel filed a motion requesting leave for petitioner to file a pro se supplemental brief. This motion was granted, and petitioner filed a supplemental pro se brief on February 8, 2018.

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2014 the maternal grandparents of B.S., petitioner's girlfriend's child, filed an abuse and neglect petition alleging that petitioner sexually abused B.S. and further alleged that the mother was a drug addict and could not provide a safe home for the child.[2] The grandparents filed an amended petition later in July alleging that the mother failed to protect the child from petitioner's physical abuse as evidenced by hand marks found on the child's buttocks. A preliminary hearing was held wherein the child's aunt testified that B.S. told her that petitioner had beat her and further described him as a "mean" man. The aunt also testified that B.S. reported sexual abuse by petitioner. The mother testified that she had no knowledge of petitioner harming B.S. and disclosed that she was pregnant with petitioner's child.

The circuit court held an adjudicatory hearing in October of 2014, during which the mother stipulated to allegations of drug abuse and failure to protect B.S. However, petitioner was not adjudicated at this hearing and the circuit court was advised that the local Child Advocacy Center had performed an interview of B.S., but she disclosed no sexual abuse.

In January of 2015, the mother gave birth to petitioner's child, H.M., who is the child at issue in this appeal. The circuit court allowed H.M. to remain in the parents' custody. In March of 2015, the DHHR filed an amended petition against petitioner, alleging that he failed to protect and ensure a suitable home for B.S. The circuit court held an adjudicatory hearing on the amended petition in July of 2015. B.S.'s therapist testified that the child disclosed that she was fearful of petitioner and that he had spanked her; however, B.S. did not disclose any sexual abuse, nor had the therapist observed any signs of sexual abuse. Petitioner testified that he had never spanked the child. After hearing evidence, the circuit court adjudicated petitioner as an abusing parent based upon his physical abuse of B.S. Petitioner requested a post-adjudicatory improvement period and the circuit court held the motion in abeyance until after a multidisciplinary team ("MDT") convened and made recommendations.

---

[2]B.S. is not petitioner's biological child and is not at issue in this appeal. Additionally, we note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

The circuit court held an initial dispositional hearing in September of 2015. Petitioner testified that he should have done more to protect B.S. He denied ever using corporal punishment, but did admit that he assisted the mother in other forms of punishment, such as time-out, and agreed that it could have been traumatic for B.S., given that he was not her biological father. The circuit court granted petitioner a three-month post-adjudicatory improvement period. As part of the developed case plan, petitioner was to participate in a psychological and parental fitness evaluation, bi-weekly counseling sessions aimed at addressing a possible diagnosis of Post-Traumatic Stress Disorder ("PTSD") and anger management, parenting training, family therapy, visitation, and MDT meetings. The circuit court extended petitioner's post-adjudicatory improvement period in March of 2016, as he was complying with the terms of his case plan. In June of 2016, B.S. was returned to the custody of the mother and petitioner.

In August of 2016, the mother filed a domestic violence protective order ("DVPO") against petitioner, alleging that he had choked her, taken her phone, thrown rocks at her, and refused to allow her to leave the home. The order was granted and petitioner was prohibited from possessing firearms. Following a review hearing in September of 2016, petitioner was granted supervised visitation with H.M. Later in September, the DHHR filed an amended petition and alleged that petitioner abused and neglected H.M. and B.S. through domestic violence and continued contact with the mother and the children in violation of the DVPO. The children were removed from the home at that time.

A preliminary hearing on the amended petition was held in October of 2016. The mother testified that she and petitioner had been living together in violation of the DVPO. The mother retracted her allegations of domestic violence and stated that she exaggerated the situation. Petitioner testified and admitted to having contact with the mother, but stated that he did not know that it was a problem as they had requested a dismissal of the DVPO. Later in October, an incident occurred when petitioner and the mother were visiting H.M. at petitioner's parents' home. During an altercation between petitioner and his father, shots were fired and petitioner's father was injured. Petitioner was charged with malicious assault.

The circuit court held an adjudicatory hearing on the amended petition in December of 2016. The circuit court granted the DHHR leave to amend the petition once again in order to include more allegations of domestic violence based upon the shooting incident. The DHHR also advised the circuit court that it terminated supervised visitation and placed petitioner on its hostile client list. Counsel for petitioner advised that petitioner had recently received psychiatric treatment for what was alleged to be PTSD related to his military service, and requested a continuance so that petitioner could address his mental health issues, which the circuit court granted.

The DHHR filed an amended petition in January of 2017 in order to incorporate the allegations of domestic violence surrounding the shooting incident. The parties agreed to proceed to the scheduled adjudicatory hearing on the previously filed amended petition as the only new allegations surrounded the shooting incident. Petitioner was not present but was represented by counsel, who informed the circuit court that petitioner had been admitted to the hospital for mental health issues. During the hearing, the mother retracted her prior testimony that she had

exaggerated the domestic violence allegations contained in the DVPO and testified that the events had occurred as described therein. According to the mother, petitioner had also broken her windshield in B.S.'s presence after an argument. Further, the mother testified that H.M. was present when the shooting incident occurred. Due to petitioner's absence, the circuit court asked his counsel whether they wished to keep the adjudicatory hearing open. Petitioner's counsel responded that was unnecessary as she was advising petitioner not to testify due to his pending criminal charges. The circuit court adjudicated petitioner as an abusing parent and determined that an improvement period would not be appropriate as his violent behavior had escalated despite having already been afforded an improvement period.

The circuit court held a final dispositional hearing in April of 2017. An MDT meeting was held in March of 2017 and although petitioner was prohibited from attending in person due to his placement on the hostile client list, he was permitted to attend via phone call. According to counsel for the grandparents, petitioner brought the mother to the MDT meeting and attempted to gain entrance to the conference room by pounding on the door and screaming at the meeting attendees. Just prior to the MDT meeting, petitioner hired new counsel, who was present at the dispositional hearing. Petitioner's new counsel requested a continuance so that he could investigate the matter that occurred at the MDT meeting as he was unaware of petitioner's alleged behavior. Due to the fact that two members of the MDT corroborated the event, the circuit court denied petitioner a continuance.

A DHHR worker then testified that, from her location in the front office, she did not hear petitioner screaming outside the door of the MDT meeting but could hearing pounding on the door. The DHHR worker also noted that petitioner previously completed adult life skills, individualized parenting, a psychological evaluation, counseling, and medication management, all of which eventually led to reunification in June of 2016. She testified that she was unsure how effective the services had been in light of petitioner's behavior following reunification, which caused the children to be removed again. Petitioner then testified that he had not screamed or pounded on the door at the MDT meeting. Rather, petitioner brought the mother to the meeting and was informed that he could not be present. Petitioner testified that he then stepped outside to call his attorney, returned inside to get verification that he could not be present, and then left. He also testified that he had been receiving treatment for his mental health issues and attended sessions twice a week. Finally, petitioner testified regarding the shooting incident and stated that his father fired thirteen shots at him and he responded by firing two shots back. Petitioner denied that the child was in harm's way during the incident. After hearing testimony, the circuit court terminated petitioner's parental rights. It is from the July 13, 2017, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

---

[3]The mother's parental rights were also terminated below. According to the parties, H.M. is placed with a foster family and the permanency plan is adoption into that home.

4

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in improperly denying his motion to continue the dispositional hearing. Specifically, petitioner argues that he was not given a meaningful opportunity to be heard because petitioner's recently hired counsel did not have time to fully investigate the case and was denied the opportunity to present witnesses necessary for disposition. We find that petitioner's argument is meritless. We have previously held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W.Va. at 235, 470 S.E.2d at 189 (citing *State v. Judy*, 179 W.Va. 734, 372 S.E.2d 796 (1988)).

Here, petitioner argues that the circuit court improperly denied his new counsel time to prepare for the dispositional hearing so that he could call the appropriate witnesses to testify. However, a review of the record indicates that petitioner's argument mischaracterizes the situation, as petitioner's counsel did not request additional time in order to prepare for the hearing. Rather, his counsel specifically requested a continuance based upon information provided regarding petitioner's inappropriate behavior at an MDT meeting. Despite petitioner's counsel's insistence that he needed time to investigate that matter, the circuit court found that a continuance was unnecessary in light of the grandparents' attorney's proffer and the testimony of the DHHR worker. Accordingly, we find no abuse of discretion in the circuit court's decision to deny the continuance and find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory or post-dispositional improvement period and denying him the right to present evidence in support of his motion.[4] We disagree. Pursuant to West Virginia Code § 49-4-

---

[4]The record indicates that the circuit court granted petitioner a post-adjudicatory improvement period in September of 2015 and that this improvement period was extended in March of 2016. According to the DHHR, petitioner did not file a motion for a post-adjudicatory or a post-dispositional improvement period after that time, nor did he orally request one at the

(continued . . .)

610(2)(D) and (3)(D), a circuit court may grant a parent an improvement period if, "the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period . . . ." Here, petitioner was previously granted a post-adjudicatory improvement period. However, the record is clear that petitioner could not establish a substantial change in circumstances since his initial improvement period or that he was likely to fully participate in a new improvement period.

In his brief on appeal, petitioner fails to allege that he experienced any substantial change in circumstances since his initial post-adjudicatory improvement period. Petitioner also fails to demonstrate that he was likely to fully participate in a new improvement period. Petitioner argues that he was denied the opportunity to present evidence from any expert witnesses relating to his mental health treatment in support of his motion for an improvement period. However, after denying his counsel's request for a continuance of the hearing, which was solely based on the desire to investigate the MDT meeting, the circuit court provided petitioner the opportunity to call witnesses. Petitioner's counsel called a DHHR worker and petitioner to testify at that time. At no time did petitioner's counsel express a desire to call additional witnesses; rather, his counsel proffered as to petitioner's current status in regard to his mental health treatment. Despite being given the opportunity to present evidence, petitioner failed to demonstrate that he was likely to participate in an improvement period. Petitioner admitted that he continued to contact the mother throughout the proceedings despite being subject to a DVPO. Further, he admitted that he shot his father with a weapon he brought to the scene in violation of a court order. Petitioner denied the mother's previous testimony that the child was at the scene of the shooting and that petitioner's mother had to pick up the child and run to safety. He argued that, while the child was present on the property, he was not in harm's way. Petitioner's noncompliance and violent behavior occurred after the completion of several services offered throughout his post-adjudicatory improvement period. Given this evidence, the circuit court did not err in denying petitioner a post-dispositional improvement period.

Finally, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. Specifically, petitioner argues that he would have complied with the terms of an improvement period because he acknowledged his failures throughout the proceedings, participated in the services provided, and sought mental health treatment for his PTSD. Petitioner's argument is unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

---

dispositional hearing. Petitioner fails to cite to the record regarding this motion and it is unapparent whether a motion was actually filed or orally requested. However, even had petitioner filed a motion for an improvement period, he failed to meet the required burden as discussed further herein.

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

We find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. The petition was amended three times after the filing of the initial petition due to petitioner's abusive behavior. He received services throughout his post-adjudicatory improvement period, including individualized parenting and adult life skills classes. Despite being provided time and resources to address the conditions of abuse, petitioner was the subject of a DVPO for choking the mother and was charged with malicious assault for shooting his father during an altercation during the proceedings. It is clear that petitioner did not respond to rehabilitative efforts or services. While petitioner argues that he should have been granted an improvement period before his rights were terminated, we have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence outlined above, we find that the circuit court did not err in terminating petitioner's parental rights, as there was no reasonable likelihood that petitioner could correct the conditions of abuse and termination was necessary for the child's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 13, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker