# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.H. and E.H.**

**No. 18-0558** (Raleigh County 15-JA-208-B and 15-JA-209-B)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.H., by counsel Dennie S. Morgan Jr., appeals the Circuit Court of Raleigh County's May 18, 2018, order terminating his parental rights to S.H. and E.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Steven K. Mancini, filed a response on behalf of the children in support of petitioner. On appeal, petitioner argues that the circuit court erred in denying his motion to continue the dispositional hearing and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2015, the DHHR filed a child abuse and neglect petition against the parents. Specifically, the DHHR alleged that the parents were arrested in North Carolina and were awaiting extradition back to Raleigh County, West Virginia. The petition indicated that both parents were expected to remain in jail upon their return and that they had not made arrangements for the children in their absence, including medical authority. The DHHR alleged that this left the children in an unsafe situation, particularly for E.H., then two-months old, as he had been born exposed to Subutex.

Upon being extradited to West Virginia, petitioner was convicted for nighttime burglary and was sentenced to one to fifteen years of incarceration. Petitioner waived his preliminary hearing and, in June of 2016, stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and took his motion

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

for a post-adjudicatory improvement period under advisement, noting that his earliest parole date would be in December of 2016.

Petitioner was eventually released on parole. In February of 2017, the circuit court granted petitioner a post-adjudicatory improvement period. As part of the terms and conditions, petitioner was required to participate in a substance abuse assessment, submit to random drug screens, secure a stable residence, and participate in parenting and adult life skills classes.

In August of 2017, the circuit court held a review hearing on petitioner's post-adjudicatory improvement period. Despite the fact that the children had been in foster care for twenty of the last twenty-two months, the parties agreed that petitioner was progressing sufficiently in his improvement period and recommended that he be granted an extension of his post-adjudicatory improvement period. The circuit court agreed and granted the same. At some point during the proceedings, the parents entered a shared parenting arrangement and the children spent time with both parents. Petitioner lived with his parents and the children stayed in their home when they were in petitioner's care.

The circuit court held a review hearing in February of 2018. The guardian submitted a report detailing that petitioner failed to provide several drug screens and was in jail for three to four days after producing a positive drug screen, violating his parole terms. Despite finding that petitioner failed to successfully complete his post-adjudicatory improvement period, the circuit court granted petitioner a post-dispositional improvement period and ordered him to submit to drug and alcohol screening, as well as follow all other aspects of his family case plan. The circuit court warned petitioner that failure to comply could result in the termination of his parental rights at the next hearing.

In May of 2018, the circuit court held a dispositional hearing. Petitioner failed to attend and his counsel proffered that petitioner informed him that his car had broken down on the way to the hearing. Counsel for petitioner requested a continuance, to which the DHHR objected because of petitioner's inability to contest the evidence to be presented. Counsel for petitioner conceded that petitioner could not contest the positive drug screen, but stated that he could mitigate the evidence by testifying to his bond with the children and his attempts to participate in services. Ultimately, the circuit court denied petitioner's motion for a continuance and proceeded to hear evidence.

The director of the Day Report Center testified that petitioner began submitting to drug screens in May of 2017. Petitioner missed several screens, submitting to only twenty-nine of fifty-seven required screens. Petitioner entirely ceased submitting to screens in November of 2017 and was discharged from the program as a result. Petitioner's supervising parole officer testified that petitioner submitted to a drug screen in February of 2018 which was positive for methamphetamine and cocaine. A Child Protective Services ("CPS") worker testified that petitioner failed to comply with his improvement periods, despite having been regularly informed of what was required of him. In fact, the CPS worker stated that petitioner never contacted her or any service providers despite being ordered to submit to drug screens, attend parenting and adult life skills classes, find a residence of his own, and participate in visitation with the children after being granted a post-dispositional improvement period at the February of

2018 hearing. However, the CPS worker expressed that she was "torn" over whether to recommend termination of petitioner's parental rights due to his bond with the children. She testified that she did not oppose supervised contact with the children at the mother's discretion.

After hearing evidence, the circuit court terminated petitioner's parental rights, finding that he did not participate in his improvement period and that any alleged bond he had with the children was not sufficient to make him comply with services. It is from the May 18, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion to continue the dispositional hearing. Specifically, petitioner argues that he was a "faithful attendee of hearings" and that both he and his family contacted his counsel to inform the circuit court that his car had broken down on the way to the hearing. According to petitioner, the children's best interest would have been served by continuing the hearing and allowing him to be present and "defend his actions." We find that petitioner's argument is meritless. We have previously held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W.Va. at 235, 470 S.E.2d at 189 (citing *State v. Judy*, 179 W.Va. 734, 739, 372 S.E.2d 796, 801 (1988)). At the dispositional hearing, petitioner's counsel conceded that petitioner could not defend his actions regarding his positive drug screen and stated that he would only testify to "mitigate" the

---

[2]The mother successfully completed her improvement period, regained custody of the children, and the petition against her was dismissed. However, subsequent to the filing of this appeal, the mother relapsed in her drug use and the children were placed with the grandparents. Should reunification with the mother not be achieved, the permanency plan for the children is adoption by the grandparents.

evidence against him. On appeal, petitioner fails to mention what evidence or mitigating testimony he would have presented had he been at the hearing. Accordingly, we find that petitioner failed to demonstrate that he was prejudiced by the circuit court's denial of his motion to continue and further find no abuse of discretion in that regard.

Petitioner next argues that the circuit court erred in terminating his parental rights when the record demonstrates that he sufficiently participated in services and shared a strong bond with his children. Specifically, the director of the Day Report Center testified that petitioner submitted to twenty-nine drug screens, all of which were negative; his parole officer testified that he had been compliant with parole services such that when he had one positive drug screen, only a three-day sanction was imposed; and the CPS worker testified that petitioner's visits with the children were appropriate and that she was conflicted over recommending termination of his parental rights based upon his bond with the children. We find no merit in petitioner's argument.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

Here, petitioner failed to follow through with services designed to reduce or prevent the abuse and neglect of his children. Petitioner was granted a post-adjudicatory improvement period, an extension to the same, and a post-dispositional improvement period that gave him nearly a year and a half to comply with services. However, petitioner only submitted to twenty-nine out of fifty-seven required drug screens and thereafter ceased submitting to all drug screens, resulting in his discharge from that service. Subsequently, petitioner tested positive for methamphetamine and cocaine when screened by his parole officer. Petitioner's argument that he was substantially compliant and only tested positive for drugs once during the proceedings is disingenuous in light of the many drug screens he refused to submit to.

Additionally, testimony at the dispositional hearing established that petitioner was required to attend parenting and adult life skills classes, but failed to respond to the service provider's attempts to contact him to begin services. His parole officer further testified that she had no record of petitioner gaining employment during his last three months under her supervision. As such, despite having ample time and access to several services, petitioner failed to comply and the proceedings stretched out over the course of nearly two and a half years. This Court has held on numerous occasions that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399,

4

405, 387 S.E.2d 866, 872 (1989). *See also* Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, [47 S.E.2d 221]."). Despite allegations of a strong bond shared by petitioner and the children, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future based upon his failure to comply with the terms of his improvement periods and further find that termination was in the children's best interests given their need for permanency. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected."
> Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence, we find that the circuit court properly terminated petitioner's parental rights. As such, he is entitled to no relief in this regard.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-

5

604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 18, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

6