**STATE OF WEST VIRGINIA**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.D. and J.D.

**No. 19-0554** (Randolph County 2018-JA-097 and 2018-JA-098)

**MEMORANDUM DECISION**

Petitioners K.B. and P.B., by counsel Steven B. Nanners, appeal the Circuit Court of Randolph County's May 16, 2019, order denying their motion for visitation with the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their motion to continue the hearing on the issue of visitation and denying their motion for visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2010, petitioner K.B., the children's grandmother, was granted guardianship over the children by the Randolph County Circuit Court in case number 10-FIG-3. In August of 2018, the DHHR filed a child abuse and neglect petition against petitioner K.B. The DHHR alleged that petitioner K.B. was physically and emotionally abusive toward the children. Specifically, the children reported several instances in which petitioner K.B. smacked them in the face. A.D. reported that the instances often occurred when the children did not perform a task to petitioner K.B.'s liking. J.D. also reported an instance in which petitioner K.B. smacked him

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

in the knee with a broom when he did not sweep the floors correctly. Petitioner K.B. waived her preliminary hearing.[2]

At an adjudicatory hearing held in February of 2019, petitioners relinquished their guardianship rights to the children. Full legal and physical custody of the children was restored to their father. Petitioners requested visitation with the children. The circuit court ordered the children's therapists to provide a "written report outlining any concerns regarding visitation" and provide them to the parties by March of 2019.

J.D.'s therapist provided a letter stating that she did not have "the information base or the objectivity necessary to make a psycho-legal recommendation on visitation." Nevertheless, based upon her interactions with J.D., the therapist noted that the child expressed "fear related to his experience with [petitioner K.B.] and has not communicated . . . a desire for continued interactions." Further, based upon his clinical levels of anger and post-traumatic stress, the therapist opined that J.D. would ideally need to be removed from any traumatic reminders "in order to have space and time to process events and emotions and learn how to manage any triggers [he] will encounter in the future." The therapist noted that J.D. had made progress in therapy and noted that if improvements continue and J.D. developed a desire to visit with petitioners, she would leave that decision to the circuit court's discretion.

A.D.'s therapist also provided a letter to the circuit court in which she opined that "[A.D.'s] symptoms of anxiety and depression can be related to her experiences with abuse and she has identified feelings of fear related to experiences with [petitioner K.B.] and has consistently stated that she does not want to see her." The therapist opined that A.D. had been working on processing her traumatic experiences, working towards healing and recovery, and learning to identify and maintain healthy relationships by learning to trust her perceptions. The therapist concluded that "[f]orcing visitation with [petitioner K.B.] against [A.D.'s] will would be counter productive to her progress thus far" and that visits with petitioner K.B. should only be considered if A.D. desired to reinitiate contact.

The circuit court held a hearing on petitioners' motion for visitation in May of 2019. At the outset, petitioners requested to continue the hearing and obtain the opinion of another therapist based on J.D.'s therapist's statement that she did not have the "objectivity necessary to make a psycho-legal recommendation." The circuit court deferred ruling on the objection until after the therapist could testify and explain her statement. J.D.'s therapist testified that by stating that she could not make a "psycho-legal recommendation" she meant that she was "not in a position to decide whether or not something should happen" from a legal standpoint and did not feel like she could make a legal conclusion. However, the therapist testified that she felt that she

---

[2]While petitioner P.B., the children's step-grandfather, was not appointed as a legal guardian in 2010, he was recognized as having acted in a parental role toward the children and was added to the proceedings at the preliminary hearing, appointed counsel, and permitted to participate in the abuse and neglect proceedings. The DHHR also included allegations of extensive substance abuse against the children's mother.

could opine on what would be best for J.D. The therapist explained that she had been working with J.D. on avoiding triggers, or reminders of experiences, and that his triggers were "related to his experiences while living with [petitioners]." She further noted that, for the purposes of J.D.'s therapy, "it would be best if he was not exposed to triggers." The therapist also testified that J.D. had expressed to her that he does not desire visitation with petitioners and that she believed his wishes should be respected.

A.D.'s therapist also testified, explaining that A.D. was suffering from symptoms of anxiety and depression related to situations that occurred while she lived with petitioners. The therapist recalled a specific instance wherein A.D. described being tied to a chair for a long period of time by petitioner K.B. The therapist testified that A.D. "has maintained adamantly from the beginning" that she does not want to see petitioner K.B. The therapist further opined that she did not feel that it would be in A.D.'s best interest to have contact with petitioner K.B. Following this testimony, petitioners renewed their motion to continue, arguing that J.D.'s therapist's testimony was inconsistent with her letter and that another opinion was necessary. Petitioners added that a continuance was necessary based upon the therapists' testimony that an intake assessment for the children had been completed. Petitioners argued that the DHHR's failure to provide these documents to support the medical diagnoses mentioned by the therapists violated discovery requirements. However, the circuit court denied the motion, finding that the intake assessment was irrelevant in determining whether visitation was in the best interests of the children and that J.D.'s therapist had adequately explained her statement.

A DHHR worker then testified that she spoke to the children individually and both children—then ages thirteen and nine—expressed to her that they did not want to visit with petitioners. Petitioners did not present any testimony or evidence in support of their motion for visitation. Counsel for the father requested that the circuit court deny petitioners' motion. After hearing testimony, the circuit court found that based upon the evidence presented, it was not in the best interests of the children to have visitation with petitioners. Nevertheless, the circuit court provided that the therapists would be given latitude to incorporate petitioners into the children's therapy if the children expressed any type of desire to reinitiate contact in the future. It is from the May 16, 2019, order denying visitation that petitioners appeal.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[3]The mother's parental rights were terminated around February of 2019. The permanency plan for the children is to remain in the care of their father.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioners first argue that the circuit court erred in denying their motion to continue the hearing on the issue of visitation. According to petitioners, the therapists did not have sufficient information to address a recommendation of visitation and did not properly consider the "psychological parent" status of petitioners. Petitioners further contend that it was erroneous for the circuit court to deny their motion to continue when the therapists discussed the children's medical diagnoses but failed to provide the supporting documentation to petitioners. Petitioners contend that they were essentially "ambushed" and were not prepared to discuss the children's mental health. Lastly, petitioners contend that J.D.'s therapist's testimony contradicted the recommendation of her letter and, therefore, was unreliable. We disagree.

This Court has previously held that "[w]hether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion." *Tiffany Marie S.*, 196 W. Va. at 235, 470 S.E.2d at 189 (citing *State v. Judy*, 179 W. Va. 734, 372 S.E.2d 796 (1988)). We find no abuse of discretion in the circuit court's denial of the motion to continue. Contrary to petitioners' arguments, the record establishes that the therapists had sufficient information to make a recommendation on visitation. The circuit court noted that the therapists had been working with the children for at least six months and had established rapport with them. The therapists testified that they made their recommendations based nearly entirely upon their interactions with the children and did not consider much outside information, but were able to opine on the best interests of the children. To the extent petitioners argue that the therapists should have been given some sort of documentation regarding their status as psychological parents, we note that petitioners do not reference any specific documentation that should have been provided. Indeed, petitioners fail to cite to any portion of the record establishing that they were deemed psychological parents by the circuit court. Further, any argument that J.D.'s therapist was not qualified to make a recommendation based on her statement that she could not make a "psycho-legal recommendation" is without merit as the therapist was able to explain that she simply meant she did not feel that she could reach a legal conclusion. The therapist did believe, however, that she possessed the necessary information to make a recommendation in regard to what was in J.D.'s best interest. As such, we find no merit in petitioner's argument that additional time was needed in order to provide documentation to the therapists or to obtain another opinion in addition to that of J.D.'s therapist.

4

We likewise find no merit in petitioners' argument that a continuance should have been granted when they were not provided the children's intake assessments documenting their diagnoses.[4] While the therapists did mention the intake assessments and the resulting diagnoses, their recommendations regarding visitation were nearly entirely based upon their interactions with the children and the children's wishes. The circuit court found that the children's diagnoses were not determinative of the issue of the children's best interests. We agree. There is nothing to suggest the intake evaluations were relevant or material to the issue of whether visitation with petitioners was in the children's best interests. Rather, the therapists, who had spent six months counseling the children, were in a better place to provide information on the issue than an assessment completed at the intake. Further, as noted above, it is clear that the therapists considered more than the intake assessment in making their recommendation. Accordingly, we find no error in the circuit court's denial of petitioners' motion to continue.

Petitioners next argue that the circuit court erred in not granting their motion for visitation. They again reference the therapists' failure to consider their status as psychological parents and the DHHR's failure to provide them with the intake assessments to support their argument that the circuit court improperly decided on the issue of visitation. We disagree.

This Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).[5]

---

[4]Petitioners cite to criminal cases in support of their argument that they should have been provided the intake assessments in discovery. They cite to no authority demonstrating how these cases apply to abuse and neglect proceedings.

[5]Again, petitioners cite to no portion of the record demonstrating that the circuit court found them to be the psychological parents of the children. We have previously held that

> [a] psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological,

(continued . . .)

5

Here, the children's therapists testified that the children did not wish to visit with petitioners and that visitation with petitioners would be a detriment to the children's progress in therapy. Again, petitioners reference no documentation regarding their status as psychological parents that should have been considered by the therapists. As noted above, the therapists were aware of the history of this family as provided by the children. Additionally, as discussed above, the content of the intake assessment was irrelevant to the issue of whether visitation was in the children's best interests, especially when viewed in light of the testimony of the therapists following six months of therapy with the children. Further, the DHHR worker also testified that the children did not desire visitation with petitioners.[6] Thus, the evidence supports the circuit court's finding that visitation with petitioners was contrary to the children's best interests. Moreover, the circuit court provided that the therapists could address future visitation with petitioners if the children expressed a desire to reinitiate contact. As such, an avenue has been provided for petitioners to visit with the children in the future if the children request it and if it is determined that such visitation is in the children's best interests. Accordingly, we find no error in the circuit court's denial of petitioners' request for visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 16, 2019, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our prior decision of *In re Brandon L.E.*, 183 W. Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified.

Syl. Pt. 3, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005). Although the record is unclear as to whether petitioners were designated as psychological parents, it is undisputed that they had sole custody of the children for a number of years while petitioner K.B. exercised legal guardianship over the children. Due to this continued care and their claims of having a bond with the children, we will address their rights to visitation under the standard set forth above.

[6]On appeal, the guardian notes that the children continue to maintain that they were physically abused at the hands of petitioner K.B. and do not desire visitation with petitioners.